UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

**MICKALE HICKS,**

               **Plaintiff,**

v.                                                            Case No. 20-CV-505

**JOHN LANNOYE,** *et al.***,**

               **Defendants.**

---

## DECISION AND ORDER ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

---

Plaintiff Mickale Hicks, who is incarcerated at the Green Bay Correctional Institution and who is representing himself, brings this lawsuit under 42 U.S.C. § 1983. (Docket # 1.) Hicks was allowed to proceed on an Eighth Amendment conditions of confinement claim for having no electricity in his cell for several days. The parties filed cross motions for summary judgment. (Docket # 16, Docket # 24 .) The parties have consented to the jurisdiction of a magistrate judge. (Docket # 10, Docket # 13.) For the reasons stated below, I will deny Hicks' motion for summary judgment and grant the defendants' motion for summary judgment.

### PRELIMINARY MATTERS

In addition to being allowed to proceed on an Eighth Amendment conditions of confinement claim against defendant John Lannoye, Hicks was also allowed to proceed on a conditions of confinement claim against two unknown officers labelled "Officer John Doe 1" and "Officer John Doe 2". (Docket # 9 at 3–4.) In the scheduling order dated July 28, 2020, the court ordered Hicks to use discovery to identify the name of the Doe defendants

and then once he learned their names, to file a motion identifying them. (Docket # 15 at ¶ 1.) The court gave Hicks until October 30, 2020 to identify the Doe defendants and warned him that if he did not do so by that date, the court may dismiss the Doe defendants. Hicks never identified the Doe defendants, so they are dismissed. I will consider summary judgment only as it pertains to the claim against Lannoye.

**FACTS**

Hicks alleges that the electricity was out in his cell, E-20, from January 23, 2020 until January 30, 2020.[1] (Docket # 17 at ¶ 14; Docket # 26 at 4.) Hicks states he stopped various officers while they were conducting rounds, including Lannoye, on January 23 and "show[ed] them that my power in E-20 was out." (Docket # 26 at 5.) Hicks then states that he continued to tell various officers, including Lannoye, "for days" about his power but they did nothing. (Docket # 25 at 1–2.)

Lannoye states that Hicks informed him that his power was out on January 27, 2020, and he was unaware of issues with Hicks' power prior to that date. (Docket # 17 at ¶¶ 20, 26.) At that point, Lannoye offered to move Hicks to a different cell, but Hicks refused. (*Id.* ¶ 21.) Lannoye also submitted a work order to GBCI's maintenance department via email. (*Id.* ¶ 22.) Lannoye noted in his work order that if the power could not promptly be restored to cell E-20, Hicks and his cellmate would need to be moved to a different cell. (*Id.*) In addition to sending an email, Lannoye called Officer Flannery, who worked in the maintenance department, to flag the work order as a priority. (*Id.* ¶ 23.) Lannoye

---

[1] In his complaint, Hicks alleges several times that he was without power for four days. (Docket # 1, 2–5). For summary judgment purposes, the court will accept the allegation that Hicks was without power from January 23, 2020 through January 30, 2020, because the parties have had the benefit of discovery and the defendants do not seem to be disputing the longer time period Hicks now alleges. Instead, they dispute when Lannoye was made aware of the power outage.

documented these actions in the cell block logbook. (*Id.*) According to Lannoye, maintenance man Craig Olson fixed the light in Hicks cell on January 27, 2020. (*Id.* ¶¶ 24–25.)

Hicks does not dispute that Lannoye put in a work order and made attempts to get the power back on in his cell on January 27. (*Id.* ¶¶ 42–43.) However, Hicks does dispute that his power was fixed on January 27. (Docket # 26 at 5.) He also notes that Lannoye never came back to his cell to check if the issue was resolved. (*Id.* at 6.) According to Hicks, it was not until he told Corrections Program Supervisor May Kay Tallier about his power outage on January 29, 2020 that anyone addressed the issue. (*Id.* at 5–6.) At that time, Tallier put in a work order, and Olson fixed the power the next day on January 30, 2020. (*Id.*) Lannoye did not work on January 29, but when he returned to work on January 30, he noticed he had been copied on Tallier's emailed work order. (Docket # 17 at ¶ 30.)

Lannoye states that even without power, Hicks was not in total darkness. The entire front of Hicks' cell was open (save for the bars enclosing the cell) allowing inmates to see into the tier of the cell-block. (*Id.* ¶ 8.) There were also can ceiling lights that are on 24 hours a day weeklong, and fluorescent bulb that were on 16 hours a day. (*Id.*) There was also a window across the tier from Hicks' cell that allowed in natural light during the day. (*Id.* ¶ 9.)

Hicks does not dispute that these lighting sources existed, but contends they did not provide enough light for him to be able to "sit on my bed and read my mail or a book without me having to hold my mail or a book real close to may face so I can see." (Docket # 25 at 3.) He also states that because of the poor lighting in his cell, he would run into his desk and bed, causing bumps and small scrapes. (*Id.* at 1.) Lannoye notes that Hicks did not seek medical attention for these injuries. (Docket # 17 at ¶ 45.) Hicks does not dispute this,

3

but states that the reason he did not put in a request to go to the Health Services Unit is because he could not afford the $7.50 fee associated with an HSU visit. (Docket # 26 at 4–5.) He treated his injuries himself using disinfectant and bandages. (*Id.* at 5.)

Additionally, during the week the electricity in his cell was out, it is undisputed that Hicks was still able to go to school, recreation time, the law library, meals, and religious services. (Docket # 17 at ¶ 35.) Hicks states that he "should not have to take my mail or anything other than my legal work to the law library to read [because he] only get[s] 45 minutes to research for case law" and he should not have to use that time doing something he should be able to do in his cell. (Docket # 26 at 4.)

## SUMMARY JUDGMENT STANDARD

The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." *See Anderson*, 477 U.S. at 248. The mere existence of some factual dispute does not defeat a summary judgment motion. A dispute over a "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

In evaluating a motion for summary judgment, the court must view all inferences drawn from the underlying facts in the light most favorable to the nonmovant. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). However, when the nonmovant is the party with the ultimate burden of proof at trial, that party retains its burden of producing evidence which would support a reasonable jury verdict. *Celotex Corp.*,

4

477 U.S. at 324. Evidence relied upon must be of a type that would be admissible at trial. *See Gunville v. Walker*, 583 F.3d 979, 985 (7th Cir. 2009). To survive summary judgment, a party cannot rely on his pleadings and "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248. "In short, 'summary judgment is appropriate if, on the record as a whole, a rational trier of fact could not find for the non-moving party.'" *Durkin v. Equifax Check Servs., Inc.*, 406 F.3d 410, 414 (7th Cir. 2005) (citing *Turner v. J.V.D.B. & Assoc., Inc.*, 330 F.3d 991, 994 (7th Cir. 2003)).

## ANALYSIS

"The Eighth Amendment can be violated by conditions of confinement in a jail or prison when (1) there is a deprivation that is, from an objective standpoint, sufficiently serious that it results 'in the denial of the minimal civilized measure of life's necessities' and (2) where prison officials are deliberately indifferent to this state of affairs." *Gray v. Hardy*, 826 F.3d 1000, 1005 (7th Cir. 2016).

The Seventh Circuit has held that where a prison fails to provide adequate ventilation, sanitation, bedding, hygiene materials, and utilities, including hot and cold water, light, heat, and plumbing, it can amount to an Eighth Amendment violation. *Gillis v. Litscher*, 468 F.3d 488, 493 (7th Cir. 2006). "Some conditions of confinement may establish an Eighth Amendment violation in combination when each alone may not do so." *Id.* "This is true when the deprivations have a mutually enforcing effect which produces the deprivation of a single, identifiable human need, such as food or warmth." *Id.* The Seventh Circuit has not directly addressed whether lack of power or inadequate lighting *on its own* constitutes a deprivation of minimal civilized measures of life's necessities.

5

Several district courts throughout the Seventh Circuit have considered this question on occasion, and generally have determined that inadequate lighting or lack of power, without more, does not rise to the level of an Eighth Amendment violation. In *Wlison v. Schomig*, 836 F.Supp. 789, 795 (N.D. Ill., 1994), the court found that a prisoner who went without working lights in his cell for three months did not suffer a constitutional deprivation. The court noted that to rise to the level of an Eighth Amendment violation, he needed to allege something akin to total light deprivation. *Id.* In *Martin v. Snyder*, Case No. 00-C-983, 2002 WL 484911, at *6 (N.D. Ill. Mar. 28, 2002), the court allowed a plaintiff to proceed on a conditions of confinement claim where he alleged that he stayed in a cell without a working light for five months; spent 12–14 hours in "near total darkness," and suffered "eye strain, headaches, and was unable to read or otherwise pursue normal activities." He also suffered a head injury as a result of falling due to lack of light. *Id.* In *Lloyd v. Briley*, Case No. 05-C-1449, 2007 WL 917385, at *6 (N.D. Ill. Mar. 23, 2007), the court found that the plaintiff did not suffer an Eighth Amendment violation because even though he was without a working cell light for 33 days, "he was not left in total darkness." The court noted that his cell "had a window and vision panel that was left open in order to let light into his cell." *Id.* There were also working lights outside of his cell, and the plaintiff was able to read, "although minimally." *Id.* In *Allen v. Hasemeyer*, Case No. 3:13-CV-851-NJR-DGW, 2016 WL 8739606, at *3–4 (S.D. Ill., Jan. 8, 2016), the court found that the plaintiff demonstrated a sufficiently serious deprivation because the evidence showed that his cell lacked bedding, running water, electricity, and was dirty.

With these cases in mind, I find that Hicks' lack of electricity in his cell does not rise to the level of an Eighth Amendment violation. There is nothing in the record indicating he

6

spent any significant amount of time in near total darkness. In fact, Hicks admits that there were several external lighting sources that still allowed him to read in his cell. His reading conditions may not have been ideal—he had to bring the book closer to his face—but like the plaintiff in *Lloyd*, he was still able to read "minimally." And unlike the plaintiff in *Martin*, Hicks was still able to otherwise go about his daily prison life. Hicks went to religious services, the law library, school, and recreation time without issue. There is also no evidence that Hicks experienced other conditions that when combined with the lack of power would amount to a serious deprivation. And, Hicks endured a lack of electricity for a relatively short time period. As demonstrated above, other courts did not find a serious deprivation even when the plaintiffs went without electricity or lighting for several weeks, as long as the plaintiffs were not in total darkness and/or experienced other conditions that, when taken in combination, caused a serious deprivation.

Additionally, Hicks does not demonstrate that his cell's inadequate lighting caused him a significantly serious physical injury that would constitute an Eighth Amendment violation. "When assessing an Eighth Amendment claim, we look for physical injury 'that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain.'" *Gray*, 826 F.3d at 1006 (quoting *Hayes v. Snyder*, 546 F.3d 516, 523 (7th Cir. 2008)). Hicks states that it was not worth paying the fee to go see the Health Services Unit to treat the bumps and scrapes he sustained, and he was able to treat them himself. Thus, his physical injuries do not demonstrate that the lack of power in his cell was a serious deprivation.

7

Case 2:20-cv-00505-NJ   Filed 06/16/21   Page 7 of 9   Document 37

Even when taking the facts in a light most favorable to Hicks, the inadequate lighting and lack of electricity in his cell did not amount to a serious objective deprivation of the minimal civilized measure of life's necessities. So, even if Lannoye and other GBCI staff ignored his complaints about the electricity for several days, because Hicks did not suffer an objectively serious deprivation, Lannoye cannot be liable for deliberate indifference. Summary judgment is granted in Lannoye's favor and the case is dismissed. Because the court grants summary judgment on the merits, the court does not need to address Lannoye's qualified immunity argument.

## ORDER

**NOW, THEREFORE, IT IS HEREBY ORDERED** that the John Doe defendants are **DISMISSED** because Hicks failed to follow the court order dated July 28, 2020 requiring Hicks to identify their real names**.**

**IT IS FURTHER ORDERED** that Lannoye's motion for summary judgment (Docket # 16) is **GRANTED**.

**IT IS FURTHER ORDERED** that Hicks's motion for summary judgment (Docket # 24) is **DENIED.**

**IT IS FURTHER ORDERED** that this case is **DISMISSED**. The Clerk of Court will enter judgment accordingly.

This order and the judgment to follow are final. A dissatisfied party may appeal this court's decision to the Court of Appeals for the Seventh Circuit by filing in this court a notice of appeal within **30 days** of the entry of judgment. *See* Federal Rule of Appellate Procedure 3, 4. This court may extend this deadline if a party timely requests an extension

and shows good cause or excusable neglect for not being able to meet the 30-day deadline. *See* Federal Rule of Appellate Procedure 4(a)(5)(A).

Under certain circumstances, a party may ask this court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Federal Rule of Civil Procedure 59(e) must be filed within **28 days** of the entry of judgment. The court cannot extend this deadline. *See* Federal Rule of Civil Procedure 6(b)(2). Any motion under Federal Rule of Civil Procedure 60(b) must be filed within a reasonable time, generally no more than one year after the entry of the judgment. The court cannot extend this deadline. *See* Federal Rule of Civil Procedure 6(b)(2).

A party is expected to closely review all applicable rules and determine, what, if any, further action is appropriate in a case

Dated at Milwaukee, Wisconsin this 16th day of June, 2021.

BY THE COURT:

_____
NANCY JOSEPH
United States Magistrate Judge